```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


CEDRIC GALETTE,                        :       CIVIL ACTION
                                       :       No. 15-5636
        Plaintiff,                     :
                                       :
     v.                                :
                                       :
CAROLYN W. COLVIN,                     :
                                       :
        Defendant.                     :


                    M E M O R A N D U M

EDUARDO C. ROBRENO, J.                            March 24, 2017
```

Presently before the Court is the motion for summary judgment filed by the Commissioner of Social Security asking for dismissal of Cedric Galette's pro se Complaint in which he seeks review and reversal of the Commissioner's final denial of his disability insurance benefits ("DIB") and supplemental security income ("SSI" ) claims under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 401-434, 1381-1383f. Upon consideration of the parties' submissions and the administrative record, the Court will grant the Commissioner's motion and enter judgment in her favor.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

On June 12, 2013, Galette protectively filed applications for SSI and DIB, alleging that he had been disabled since March 6, 2013. R. 203-15. The Social Security Administration initially denied his claims on November 8, 2013. R. 102-111. An administrative law judge ("ALJ") held a hearing regarding the claims on January 7, 2015, at which Galette was represented by a non-attorney representative. R. 37-63. On February 25, 2015, the ALJ issued an unfavorable decision, finding that Galette was not disabled. R. 17-29. Galette requested review by the Appeals Council, which denied his request on April 30, 2015. R. 8-10.

Galette filed his Complaint in the present action on October 26, 2015, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). ECF No. 3. After failing to comply with this Court's procedural order requiring the filing of a "Brief and Statement of Issues in Support of Request for Review," the Court issued a rule to show cause why the matter should not be dismissed. ECF No. 10. Galette filed a hand-written statement on August 16, 2016, which the Court deemed a response to the rule to show cause. ECF Nos. 11, 14. After a September 23, 2016 rule to show cause hearing, the Court ordered

---

[1]    Citations to "R." are citations to the administrative record, which is located on the docket at ECF number 8.

the Commissioner to file a motion for summary judgment. ECF No. 14. The Commissioner filed her motion on November 14, 2016 and Galette filed responses on December 14, 2016 and February 27, 2017. ECF Nos. 18-21.

**II. STANDARD OF REVIEW**

In reviewing the Commissioner's final determination that a person is not disabled and, therefore, not entitled to Social Security benefits, the Court may not independently weigh the evidence or substitute its own conclusions for those reached by the ALJ. See Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Instead, the Court must review the factual findings presented in order to determine whether they are supported by substantial evidence. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion." Rutherford, 399 F.3d at 552 (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003)). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" Id. (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the ALJ's decision is supported by substantial evidence, the Court may not set it aside "even if [it] would have decided the factual inquiry differently." Hartranft v.

Apfel, 181 F.3d 358, 360 (3d Cir. 1999). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

An ALJ uses a five-step inquiry to determine if a plaintiff is entitled to benefits. A plaintiff must first establish that (1) she is not engaged in any substantial gainful activity, and (2) she suffers from a severe impairment. Jesurum v. Sec'y of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (citing Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987)). If the plaintiff satisfies these two elements, the ALJ determines (3) whether the impairment is equivalent to an impairment listed in 20 C.F.R. pt. 404, Subpt. P, App. 1, which creates a presumption of disability. Id. If not, the plaintiff must prove that (4) the impairment nonetheless prevents her from performing work that she has performed in the past. Id. The relevant inquiry is "whether the claimant retains the residual functional capacity to perform her past relevant work." Fargnoli v. Massanari, 247 F.3d 34, 39 (3d Cir. 2001). If the plaintiff proves she does not, the ALJ must grant her benefits unless the ALJ can demonstrate that (5) considering plaintiff's residual

4

functional capacity ("RFC"), age, education, and work experience, there are jobs available in significant numbers in the national economy that the plaintiff can perform. Jesurum, 48 F.3d at 117 (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)).

**III. THE ALJ'S DECISION**

Using the five-step inquiry described above, the ALJ determined that Galette was not disabled.

At step one, the ALJ found that Galette had not engaged in substantial gainful activity since March 6, 2016. R. 19.

At step two, the ALJ found that Galette suffered from the following severe impairments: severe right upper extremity disorders including degenerative joint disease, disorders of the back, affective disorders, anxiety disorders, a chronic pain disorder, a personality disorder with cluster B traits, and polysubstance abuse. R. 20.

At step three, the ALJ found that Galette's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. pt. 404, Subpt. P, App. 1. Id.

At step four, the ALJ found that Galette had the RFC to perform a limited range of sedentary work. R. 24. The ALJ

5

concluded that, while performing this work, Galette could "frequently but not constantly reach, handle, finger, use foot controls, climb ramps and stairs, balance and stoop," "only occasionally reach overhead, feel, push, pull, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds," "must avoid more than frequent exposure to humidity and wetness and more than occasional exposure to dust, odors, fumes, gas, extreme cold, extreme heat, vibration, and hazards including moving machinery and unprotected heights," "cannot perform work in a very loud environment and is limited to routine, repetitive tasks with no frequent changes in the work setting, no public interaction, and only occasional interaction with coworkers and supervisors." Id.

At step five, relying on the testimony of a vocational expert ("VE"), the ALJ found that, considering Galette's age, education, work experience, and RFC, he could not perform his previous work, but could perform several jobs available in significant numbers in the national economy, including addresser, sorter, and stuffer. R. 27-28. As a result, the ALJ found that Galette was not disabled. Id.

**IV. DISCUSSION**

Galette filed three documents in support of his Complaint. See ECF Nos. 11, 20, 21. These submissions do not

allege any specific errors made by the ALJ but instead detail Galette's poor financial wellbeing, personal history, the general poor condition of his physical and mental health, and his alleged mistreatment by the mothers of his children. Given the lack of any specific allegation of error, the Court will analyze in general whether the ALJ's decision was supported by substantial evidence.[2]

As discussed below, the Court concludes that the ALJ's decision is supported by substantial evidence. Thus, it will grant the Commissioner's motion for summary judgment and dismiss Galette's claims.

First, the ALJ reasonably described Galette's physical limitations and the notes associated with them. She indicated that there had been some issues with his jaw, right elbow, hand, and foot, and headaches, but considered that there was little evidence of ongoing symptoms. R. 20-21, 25-26; see e.g., R. 406-08, 420, 437-44, 450-58, 468, 494-96, 536-41, 547-56, 564-73, 583-96, 658-60. She also noted that, at the time of the September 2013 consultative exam, Galette had normal range of motion in both hands and elbows, but reduced grip strength. R. 21, 583-96.

---

[2] Attached to some of these submissions is evidence that was not before the ALJ. Such evidence may not be considered by this Court in making its determination. Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991).

The ALJ also indicated that Galette had been in several auto accidents, had complained of cervical and lumbar pain therefrom, and that objective testing showed some mild right S1 radiculopathy and mild disc bulging. R. 21, 26,378-94, 493, 684-86. However, she further noted that at the 2013 consultative exam, Galette had full cervical and lumbar range of motion and denied back pain in October 2013. R. 21, 583-96, 623-27.

Second, the ALJ adequately considered Galette's mental limitations and the associated records. She noted that he was diagnosed in July 2013 at the University of Pennsylvania psychiatric practice with a mood disorder, a personality disorder with cluster B traits, and polysubstance abuse. R. 21, 508-18. She also recorded that several times Galette appeared focused on obtaining Xanax and either left treatment if the drug was not prescribed or left after it was prescribed and did not attend follow up treatments. R. 21, 429-32, 508-09, 516. She also provided that Galette's treatment notes indicated possible malingering and that he appeared motivated by a desire to receive disability benefits. R. 21, 26, 508-09, 516.

The ALJ recounted that, during an August 2013 initial evaluation at the Multicultural Wellness Center, Galette was fully oriented and cooperative, denied psychotic symptoms, had fair memory but poor judgment, was diagnosed with bipolar

8

disorder and impulse control disorder, and was prescribed medication, including Xanax. R. 22, 673-78. She also noted that Galette apparently received psychotherapy through June 2014. R. 22, 741-42.

The ALJ reasonably explained that she did not place significant weight on Galette's 45-55 Global Assessment of Functioning ("GAF") score in light of its inherent subjectivity, lack of clarity, and questionable psychometrics. R. 22, 676. Indeed, as she mentioned, it is for these reasons that the use of the GAF scale has been eliminated in the DSM-V.

Third, the ALJ adequately explained the weight she gave to the opinions of physicians in the record. For example, she gave the reviewing state agency psychologist who assessed Galette with no more than moderate psychological limitations great weight because he provided specific reasons for his opinions, showing that they were well grounded in the evidence of record. R. 22, 27, 71-77, 88-93.

The ALJ also reasonably gave limited weight to the opinion of Galette's treating psychiatrist, Dr. Kasmani. She concluded that his assessment that Galette had marked limitations in every area noted on the form was unsupported by and inconsistent with Galette's recent treatment notes and the record. R. 22-23, 27, 803-06. The ALJ also noted that Dr.

Kasmani included impairments on the form which were not found in the treatment records or in Galette's testimony. R. 23.

Similarly, the ALJ reasonably gave no weight to a check-box form indicating marked and extreme limitations signed by therapist Alexis Jean Jude because she did not appear to be Galette's therapist and the record did not contain any of her records. R. 23, 27, 597-99; see Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (providing that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best," and that "where these so-called reports are unaccompanied by thorough written reports, their reliability is suspect") (internal quotation marks omitted).

The ALJ also appropriately gave little weight to a welfare form apparently signed by a treating physician in June 2013, indicating that Galette was "permanently disabled." R. 26, 492. No specific work limitations were provided on the form, and the finding of disability is an issue reserved to the Commissioner. Id.; see 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

Finally, the ALJ adequately examined Galette's ability to function, noting, inter alia, that he lives alone but has many friends, cares for his personal needs and finances, prepares simple meals, takes public transportation, and has been

able to travel to New York three or four times since his disability onset date. R. 23, 25; see e.g. R. 44-45, 48-52.

While acknowledging that Galette had severe impairments, the ALJ justifiably had reservations regarding the credibility of his assertions in light of the limited findings in the objective record. R. 25. She concluded that the record failed to document an impairment that would cause disabling pain. Id. She again recounted the relevant medical evidence, as well as the fact that Galette's treatment had been sporadic, reciting specific examples. R. 25-26. Likewise, the ALJ fairly asserted that the evidence failed to support the existence of any significant pathology capable of producing debilitating mental limitations. Id.

After independently reviewing the record evidence, the Court concludes that the ALJ's RFC assessment and reliance on the VE's testimony in finding that Galette was not disabled was adequately supported by substantial evidence in the record.

**V.   CONCLUSION**

For the reasons provided above, the Court will grant the Commissioner's motion for summary judgment and enter judgment in her favor.

An appropriate order follows.